UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JOSEPH WARN, JR.,

                Plaintiff,

-against-

HERKIMER COUNTY; MICHAEL SCALISE both individually and in his official capacity as Director of the Herkimer County Probation Department; BIANCA CASTELLANO both individually and in her official capacity,

                Defendants

---

U.S. DISTRICT COURT – N.D. OF N.Y.
**FILED**
May 02 - 2025
John M. Domurad, Clerk

Civil Case No.
6:25-cv-00543 (ECC/ML)

JURY TRIAL DEMANDED

## **COMPLAINT**

(Seeking damages for disability-based discrimination: violations of the Americans with Disabilities Act, Rehabilitation Act, and New York State Human Rights Law)

### INTRODUCTION

    1.    This is an action for damages and other relief by Joseph Warn, Jr. ("Mr. Warn"), who was denied equal access to programs, services and activities of Herkimer County and New York State because of the absence of accommodations for people with disabilities, in violation of Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, and the New York State Human Rights Law ("NYSHRL"). Defendants Herkimer County, Michael Scalise ("Mr. Scalise"), and Bianca Castellano ("Ms. Castellano") intentionally discriminated against Mr. Warn on the basis of his disability by denying him equal access to opportunity to succeed on supervision with the Herkimer County Probation Department ("Herkimer Probation Department") and failing to provide or uphold adequate processes for

1

seeking and receiving reasonable accommodations. Defendants also retaliated against Mr. Warn for seeking accommodations to which he was entitled. Mr. Warn seeks damages, attorneys' fees, costs and other appropriate relief.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this case (1) under 28 U.S.C. § 1331, because it presents a federal question under the Rehabilitation Act of 1973, 29 U.S.C. § 794; and (2) under 1343(a)(4).

3. With respect to the state law claim under the NYSHRL, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 in that the state law claims derive from a common nucleus of operative fact and are so related to the federal claims that the form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this District under 28 U.S.C. § 1391(b) and (e) as Defendants reside in this district and Plaintiffs' claims for relief arose in this district.

## JURY DEMAND

5. Plaintiff demands trial by jury in this action.

## PARTIES

6. Plaintiff JOSEPH WARN JR. ("Mr. Warn") is a resident of New York with physical and mental disabilities.

7. Defendant Herkimer County is a county government organized and existing under the laws of the State of New York which receives federal funding.

8. At all times relevant hereto, Herkimer County, was responsible for the policies, practices, supervision, implementation and conduct of all matters, including appointment,

training, supervision and conduct of personnel, at the Herkimer Probation Department and Herkimer County Jail. In addition, at all relevant times, Herkimer County was responsible for enforcing the rules of the Herkimer Probation Department and Herkimer County Jail and ensuring their compliance with applicable laws and legal standards.

9. Defendant Michael Scalise ("Mr. Scalise") is, and was at all times referenced in this complaint, the director of the Herkimer Probation Department, and, as such, is a policy maker with respect to the treatment of probationers under his supervision. Mr. Scalise's principal place of business is 109 Mary St Suite #1202, Herkimer, NY 13350. He is made a Defendant in this action in both his individual and official capacities.

10. Defendant Bianca Castellano ("Ms. Castellano") was at all times referenced in this complaint a Probation Officer employed by the Herkimer Probation Department, and directly supervised Mr. Warn. Upon information and belief, Ms. Castellano's principal place of business is 109 Mary St Suite #1202, Herkimer, NY 13350. She is made a Defendant in this action in both her individual and official capacities.

## STATEMENT OF FACTS

11. Mr. Warn is a 34-year-old male in treatment for mental health and chronic back and leg pain.

12. Mr. Warn was diagnosed with a psychiatric disorder in childhood. His functioning has been and is substantially limited by mental health-related disability, as he is disadvantaged in activities related to, for example, executive function and emotional regulation.

13. Mr. Warn is also restricted in the performance of major life activities related to walking, standing, and movement due to his chronic pain. *See* Exhibit 1, Albany and Saratoga Centers for Pain Management treatment notes dated June 2023 (excerpt).

14. Mr. Warn was placed under supervision in or around November 2020 following a moving violation in the Town of Root, in Montgomery County.

15. Mr. Warn was under the supervision of both the Montgomery County probation department and the Herkimer County probation department.

16. With the Montgomery County probation department, Mr. Warn reported weekly for check-ins, primarily by phone.

17. From around the time the disposition for the moving violation was entered in April 2021, until early 2022, Mr. Warn continued to report weekly to the Montgomery County probation department by phone.

18. Starting on or around July 2021, Mr. Warn was additionally required to come to in-person check-ins at the Herkimer Probation Department including drug testing about every other week.

19. Ms. Castellano was assigned as Mr. Warn's probation officer.

20. Upon information and belief, Herkimer Probation Department, Mr. Scalise, and Ms. Castellano were aware Mr. Warn had a diagnosed mental-health related disability.

**Physically disabling injury and denials of requests for accommodation**

21. In late December 2021, Mr. Warn slipped, while carrying livestock, fell, and was injured.

22. Following this injury, Mr. Warn has had significant lower back and leg pain.

23. Mr. Warn called to inform the Herkimer Probation Department of his injury and left a voice mail.

24. A family member was able take time off around the holidays to drive Mr. Warn to his December 28, 2021 check-in. He had pain from his injury while moving up the two flights of stairs necessary to reach Ms. Castellano's office.

25. Mr. Warn informed Ms. Castellano again of his injury in person at that check-in, while visibly in pain. At this time, he requested to switch his check-ins to home visits or remote check-ins (for example by phone). Ms. Castellano, on behalf of the Herkimer Probation Department, told him no.

26. After that, Mr. Warn's pain symptoms did not improve as he had hoped, but instead worsened, and he was taken to the emergency room at Little Falls Hospital on December 31, 2021, and was released with a note later that day.

27. Before his scheduled January 3, 2022 check-in with the Herkimer Probation Department, Mr. Warn called to explain that he did not think he could make it in person to his check-in given his difficulty walking after his recent injury. In response, Ms. Castellano told Mr. Warn that if he did not show up, he would be violated under the terms of his probation.

28. Mr. Warn was in fact unable to come to his scheduled January 3, 2022 check-in. This was later cited as a violation of his probation conditions.

29. For his scheduled January 10, 2022 check-in, because Mr. Warn did not want to get in trouble, he forced himself to walk the over 3.5 miles each way from his cousin's house where he was staying to the Herkimer Probation Department. This took about three hours one way, which is about twice as long as it took before his injury, because he was in serious pain and had to take many breaks. The return trip took even longer, closer to four hours, due to pain, stress, and fatigue.

30. When he arrived for that check-in, Mr. Warn was visibly in pain from the walk to his check-in and the stairs to Ms. Castellano's office. It was uncomfortable for him even to sit in the office's wooden chairs due to his pain.

31. At this check-in, Mr. Warn presented documentation from Little Falls Hospital confirming that he was seen in their emergency department on December 31, 2021.

32. At most if not all of his in-person check-ins from this point, Mr. Warn would ask if there was any way he could do his check-ins without having to walk to the office, and was told no.

33. Mr. Warn continued to force himself to walk to weekly check-ins. These walks caused Mr. Warn significant pain and distress.

34. The shortest route for Mr. Warn to walk to the Herkimer Probation Department was mainly along highway, rather than sidewalk, which made him feel unsafe. Snow, ice, and rain were common during these walks given the season. On these walks Mr. Warn was generally afraid of falling and getting further injured. Mr. Warn nearly fell multiple times, twisting himself to avoid falling, and did fall at least once.

35. At various times during these walks, Mr. Warn experienced painful throbbing in his sciatic nerve, and pain down his left leg, hamstring, and hip. He also felt tingling "pins and needles" sensations in his legs, numbness, and burning pain sensations in his lower back, left buttock, and hamstring. He has described feeling like he was throwing his legs in front of each other rather than walking properly.

36. In this period between January and April 2022, Mr. Warn experienced exacerbated pain for days after each time he forced himself to walk to his in-person check-ins. These

6

experiences have likely worsened the trajectory of his ongoing treatment and recovery for chronic pain.

37. In other cases, the Herkimer Probation Department has permitted check-ins by phone.

38. Mr. Warn asked Ms. Castellano why the Herkimer Probation Department could not do phone check-ins with him, in contrast to the Montgomery Probation Department, which did allow phone check-ins with him. Mr. Warn was told words to effect of, there had to be special conditions, such as being in a wheelchair, for which he did not qualify.

39. Mr. Warn at times requested for the Herkimer Probation Department to help arrange a public service vehicle to transport him to check-in appointments, and was told no.

40. During this time, Mr. Warn was unable to afford a car of his own, in part because he had been paid below minimum wage at his job, and lost that job soon after his injury. The Herkimer Probation Department was aware of this.

41. Mr. Warn also did not have access to any convenient public transportation route to help him get to his check-ins. There was a bus line which he could have taken for a portion of the way, but he would still have had to walk nearly a mile each way. The bus was also not affordable for him. Car services such as Uber would not have been financially viable for Mr. Warn to use either. The Herkimer Probation Department was aware of this.

42. Occasionally a family member was able to drive Mr. Warn to his check-in, but they were often not available at that time in the middle of the work day.

43. Mr. Warn requested to move the check-ins to a different time that would make it easier for him to get a ride. The Herkimer Probation Department also denied this request.

44.	Mr. Warn felt devalued and hurt by the repeated dismissals of his requests for accommodation, and lack of dialogue about these requests, causing distress which was amplified by his mental health conditions.

45.	The Herkimer Probation Department's official policies, customs, and/or inadequate training of employees caused violations of Mr. Warn's rights.

46.	Mr. Warn's disabilities could have been accommodated without undue burden.

47.	Due to the Herkimer Probation Department's lack of accommodations, Mr. Warn was not provided with an equal opportunity to effectively access the program and service of probation, and access the benefits of timely release from supervision. Compared to probationers without disabilities, he was not given the same opportunity to succeed.

48.	Mr. Scalise and Ms. Castellano violated clearly established statutory and constitutional rights of which a reasonable person would have known.

49.	The Herkimer Probation Department, Mr. Scalise, and Ms. Castellano also retaliated against Mr. Warn for making accommodation requests.

50.	In mid-March, the family member Mr. Warn was staying with moved to North Carolina. Mr. Warn requested that the Herkimer Probation Department transfer him to North Carolina, and was told no.

51.	In relation to an employment matter, Mr. Warn was connected with the Worker Justice Center of New York, a free legal services organization. Mr. Warn mentioned to his attorneys concerns regarding his ability to comply with his probation requirements. His attorneys informed him that he had a right to reasonable accommodations and offered to write a letter to his probation officer.

52. On May 4, 2022, at Mr. Warn's behest, counsel at Worker Justice Center sent a letter via email to Ms. Castellano noting in writing Mr. Warn's diagnosed sciatica, lower back pain, and mental disabilities, as well as the hardship posed by walking to in-person check-ins. *See* Exhibit 2, Worker Justice Center Letter Dated May 4, 2022. This letter again requested accommodations such as at-home or virtual check-ins, or at least some dialogue about appropriate accommodations. Mr. Warn's Worker Justice Center attorneys informed him that the Herkimer Probation Department did not respond to them about this request for accommodations.

53. After receiving this letter, Herkimer Probation Department employees called Mr. Warn, and said words to the effect of, his accommodation request could not be granted because he was not "fully disabled."

54. Soon after, Ms. Castellano gave Mr. Warn a notice of violation of probation terms, dated May 25, 2022.

55. A substantial portion of these violations related to activities that were made difficult or impractical by Mr. Warn's disabilities, for example: (1) failing to report to Ms. Castellano on 1/3/2022, 3/2/2022, 4/22/2022, and 5/6/2022; (2) not attending mental health treatment before February 2022; and (3) not obtaining suitable employment since being injured at and losing his farm job.

56. Mr. Warn was told around the time of his sentencing that, on good behavior, he could be finished with his probation term in April 2022. He was surprised that instead he was, for the first time and without warning, issued a violation of his probation terms and now faced continued time under supervision.

57. At the arraignment for these alleged probation violations, Mr. Warn was sentenced to serve about three months at Herkimer County Jail, which would conclude his supervision.

### Failure to accommodate at Herkimer County Jail

58. Mr. Warn entered the custody of Herkimer County Jail around July 2022.

59. While at Herkimer County Jail, Mr. Warn filled out multiple sick call slips related to his back and other pain, but not receive any medical care for his conditions.

60. For example, Mr. Warn requested a thicker medical mattress multiple times, but these requests seemed to be ignored.

61. Mr. Warn requested a pillow to help with his pain, and was never provided any pillow, so he attempted to reduce his pain by bunching up the top of his mattress to rest his head on, with limited success.

62. Related to insurance reasons, Mr. Warn had not been able to establish treating relationships with healthcare providers to address his back and leg pain before he was incarcerated at Herkimer County Jail.

63. The duration and conditions of his incarceration at Herkimer County Jail likely worsened the trajectory of his ongoing treatment and recovery for chronic pain.

64. Ultimately Mr. Warn was incarcerated at Herkimer County Jail for about two months.

65. Herkimer County's official policies, customs, and/or inadequate training of employees caused violations of Mr. Warn's rights at the Herkimer County Jail.

### Ongoing medical treatment

66. Following his release from Herkimer County Jail around September 2022, Mr. Warn was able to arrange some medical care. An MRI in December 2022 showed spondylitic changes around his lower vertebrae, such as facet and ligament flavum hypertrophy, some left

10

asymmetric bulging disc with posterior annular fissure, and spinal canal and bilateral foraminal stenosis.

67. Starting in 2022, Mr. Warn has tried treatments including physical therapy, exercise, chiropractic, and a TENS unit, which have not been effective at reducing his pain. Epidural steroid injections for example in August 2023 provided some relief, at first lasting up to a week, but more recently lasting only a few hours. After the effects of the injections wore off his pain levels returned to baseline.

68. Mr. Warn is currently prescribed Meloxicam as an anti-inflammatory pain medicine and Tizanadine to help with spasms in the evening that can interfere with sleep.

## **CLAIMS FOR RELIEF**

### **FIRST CLAIM FOR RELIEF**

**Disability-Based Discrimination in Violation of Title II of the Americans with Disabilities Act (42 U.S.C. § 12131 *et seq*.)**

69. Plaintiff realleges and incorporates by reference all of the previous allegations as if fully set forth herein.

70. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity. . ." 42 U.S.C. § 12132, 28 C.F.R. § 35.130.

71. Federal regulations implementing the ADA require that public entities allow qualified individuals to "gain the same benefit, or to reach the same level of achievement as that provided to others." 28 C.F.R. § 35.130(b)(1). This includes "criteria or methods of administration" with discriminatory effects, or that have the purpose or effect of defeating or

11

impairing "objectives of the public entity's program with respect to individuals with disabilities . . ." 28 C.F.R. § 35.130(b)(3).

72. Federal regulations implementing the ADA also require a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability . . . ." 28 C.F.R. § 35.130(b)(7)(i).

73. All defendants intentionally, and/or with deliberate indifference to the likely unlawfulness of their actions, subjected Mr. Warn to disability-based discrimination, in violation of his rights under the Americans with Disabilities Act, by brazenly failing to provide Mr. Warn any accommodations, and thus failing to provide him an equal opportunity to succeed under the terms of his probation.

## SECOND CLAIM FOR RELIEF

**Retaliation in Violation of Title II of the Americans with Disabilities Act (42 U.S.C. § 12203 *et seq*.)**

74. Plaintiff realleges and incorporates by reference all of the previous allegations as if fully set forth herein.

75. The ADA makes it illegal to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter" or to "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of" any right it grants or protects. 42 U.S.C. § 12203(a, b). Implementing regulations specify that these prohibitions apply to any "private or public entity" including individuals. 28 C.F.R. § 35.134.

76. Mr. Warn opposed Defendants' unlawful discrimination by making repeated accommodation requests and complaints. This was met with retaliation by all Defendants, who interfered with Mr. Warn's rights.

77. For example, after Mr. Warn requested accommodations in writing with assistance from a law office, no accommodations were made. About three weeks later Ms. Castellano issued violations of Mr. Warn's probation terms, largely citing probation conditions for which he had requested accommodations to comply with.

78. By the actions set forth above, Defendants have retaliated against Plaintiff for engaging in protected activity, in violation of 42 U.S.C. § 12203.

## THIRD CLAIM FOR RELIEF

**Disability-Based Discrimination in Violation of Section 504 of the Rehabilitation Act (29 U.S.C. § 794 *et seq*.)**

79. Plaintiff realleges and incorporates by reference all of the previous allegations as if fully set forth herein.

80. Section 504 of the Rehabilitation Act states: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . ." 29 U.S.C. § 794(a).

81. To assure meaningful access, the Rehabilitation Act and its implementing regulations prohibit Defendants from "[d]eny[ing] a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit, or service" or affording them unequal opportunity. 28 C.F.R. § 39.130(b)(1)(i-ii).

82. The Rehabilitation Act requires covered agencies to systematically, and affirmatively, make "reasonable accommodations" that would "assure meaningful access" to their programs and services.

83. All Defendants' systematic failure to assess whether and what types of accommodations Mr. Warn has required, and to provide such accommodations, has deprived Mr. Warn of equal opportunity to succeed on supervision. As a result, Mr. Warn has lacked meaningful access to the benefits of supervision in violation of the Rehabilitation Act. All Defendants intentionally, and/or with deliberate indifference to the likely unlawfulness of their actions, subjected Mr. Warn to disability-based discrimination in violation of his rights under the Rehabilitation Act.

### FOURTH CLAIM FOR RELIEF

**Retaliation in Violation of the Rehabilitation Act (29 U.S.C. § 701 *et seq*.)**

84. Plaintiff realleges and incorporates by reference all of the previous allegations as if fully set forth herein.

85. Mr. Warn opposed Defendants' unlawful discrimination by making repeated accommodation requests and complaints. This was met with retaliation by all Defendants, who interfered with Mr. Warn's rights in violation of the prohibition against retaliation courts have found is implied by the Rehabilitation Act.

### FIFTH CLAIM FOR RELIEF

**Disability-Based Discrimination in violation of New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.***

86. Plaintiff realleges and incorporates by reference all of the previous allegations as if fully set forth herein.

87. In addition, Mr. Scalise and Ms. Castellano aided and abetted, as defined in NYSHRL § 296(6), the discrimination and retaliation of Herkimer County against Mr. Warn.

88. As a result of these illegal actions, Plaintiff has suffered damages, including pain and suffering, mental anguish, humiliation, and emotional distress.

## SIXTH CLAIM FOR RELIEF

**Retaliation in violation of New York State Human Rights Law, N.Y. Exec. Law § 296(7)**

89. Plaintiff realleges and incorporates by reference all of the previous allegations as if fully set forth herein.

90. Mr. Warn opposed Defendants' unlawful discrimination by making repeated accommodation requests and complaints. This was met with retaliation by all Defendants, who interfered with Mr. Warn's rights.

91. For example, after Mr. Warn requested accommodations in writing with assistance from a law office, no accommodations were made. About three weeks later Ms. Castellano issued violations of Mr. Warn's probation terms, largely citing probation conditions for which he had requested accommodations to comply with.

92. By the actions set forth above, Defendants have retaliated against Plaintiff for engaging in protected activity, in violation of N.Y. Exec. L. § 296(7).

93. As a result of these illegal actions, Plaintiff has suffered damages, including pain and suffering, mental anguish, humiliation, and emotional distress.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that the Court:

A. DECLARE that Defendants' actions, as alleged herein, violated Mr. Warn's rights under the Americans with Disabilities Act and Rehabilitation Act;

B. DECLARE that Defendants' actions, as alleged herein, violated Mr. Warn's rights under the New York State Human Rights Law;

C. ENTER JUDGMENT awarding Mr. Warn damages against Defendants on his Americans with Disabilities Act and Rehabilitation Act claims in an amount appropriate to the evidence adduced at trial, including for example nominal or compensatory damages;

D. ENTER JUDGMENT awarding Mr. Warn damages against Defendants on his New York State Human Rights Law claims in an amount appropriate to the evidence adduced at trial, including for example damages for pain and suffering and emotional distress, and nominal or compensatory damages;

E. ENTER JUDGMENT awarding Mr. Warn his costs and reasonable attorneys' fees, costs, and interest in this action pursuant to 29 U.S.C. § 794a and any other applicable source of law;

F. ENTER JUDGMENT awarding Mr. Warn such other legal and equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Malcolm Kim, Esq.
M.S. Kim Law
2269 Lyell Avenue, Suite 103 #1074 (mail only)
Rochester, NY 14606
· mal@mskimlaw.com
**ATTORNEY FOR THE PLAINTIFF**