**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JOSEPH WARN, JR.,

                                   Plaintiff,                           6:25-cv-543
                                                              (ECC/ML)

v.

HERKIMER COUNTY; MICHAEL SCALISE
both individually and in his official capacity as
Director of the Herkimer County Probation
Department; BIANCA CASTELLANO both
individually and in her official capacity,

                                   Defendants.

---

Malcolm S. Kim, Esq., *for Plaintiff*
Stephen M. Groudine, Esq., *for Defendants*

**Hon. Elizabeth C. Coombe, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

Plaintiff Joseph Warn filed this action alleging that Defendants Herkimer County (County), Herkimer County Probation Department (HPD) Director Michael Scalise, and HPD Probation Officer Bianca Castellano unlawfully discriminated against him on the basis of disability in violation of Title II of the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, and the New York State Human Rights Law (NYSHRL). Dkt. No. 11. Presently before the Court is Defendants' motion to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 13. The motion is fully briefed. Dkt. Nos. 13, 17, 18. For the following reasons, Defendants' motion to dismiss is granted in part and denied in part.

## I.    FACTS[1]

Plaintiff Joseph Warn Jr. is a "34-year old male in treatment for mental health and chronic back and leg pain."  Amended Complaint (Am. Compl.) ¶ 11, Dkt. No. 11.  The County oversees HPD and Herkimer County Jail.  *Id*. at ¶ 8.

In approximately July 2021, when Castellano was Plaintiff's assigned probation officer, Plaintiff was required to report for in-person check-ins, including drug testing.  Am. Compl. ¶¶ 18, 19.  In late December 2021, Plaintiff slipped and injured his back causing "significant lower back and leg pain."  *Id.* at ¶ 21-22.  Plaintiff notified HPD that he was injured.  *Id*. at ¶ 23.  Plaintiff reported to his December 28, 2021 check-in after a family member drove him.  *Id*. at ¶ 24.  At this check-in, Plaintiff "had pain from his injury while moving up the two flights of stairs necessary to reach Castellano's office" and, "while visibly in pain," notified Castellano that he was injured and asked "to switch his check-ins to home visits or remote check-ins."  *Id*. at ¶¶ 24-25.  Plaintiff's request was denied.  *Id*.

Before his January 3, 2022 check-in, Plaintiff called HPD to explain that, "given his difficulty walking after his recent injury," he "did not think he could make it in person to his check-in," and Castellano told him that if he did not show up in person, he would be "violated under the terms of his probation."  *Id*. at ¶ 27.  Plaintiff did not attend the January 3, 2022 check-in.  *Id*. at ¶ 28.

Plaintiff walked to his January 10, 2022 check-in, 3.5 miles each way, which "took about three hours one way" and took "closer to four hours" to return home.  Am. Compl. ¶ 29.  This walk

---

[1] These facts are drawn from the Amended Complaint.  Dkt. No. 11.  The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true any legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

took "about twice as long as it took before his injury, because he was in serious pain and had to take many breaks." *Id*. At this check-in Plaintiff "was visibly in pain from the walk" and "presented documentation from Little Falls Hospital confirming that he was seen in their emergency department on December 31, 2021." *Id*. at ¶¶ 30-31.

Plaintiff "continued to force himself to walk to weekly check-ins" which caused "significant pain and distress." Am. Compl. ¶ 33. Plaintiff repeatedly asked "if there was any way he could do his check-ins without having to walk to the office," but his requests were denied. *Id*. at ¶ 32. During his walks, Plaintiff walked "mainly along highway, rather than sidewalk," and "nearly fell multiple times, twisting himself to avoid falling, and did fall at least once." *Id*. at ¶ 34. Plaintiff "experienced painful throbbing in his sciatic nerve, and pain down his left leg, hamstring, and hip" and described "feeling like he was throwing his legs in front of each other rather than walking properly." *Id*. at ¶ 35. Plaintiff "experienced exacerbated pain for days after each time he forced himself to walk to his in-person check-ins." *Id*. at ¶ 36.

HPD "has permitted check-ins by phone," but when Plaintiff asked Castellano why he could not do phone check-ins, she told him that "there had to be special conditions, such as being in a wheelchair, for which he did not qualify." Am. Compl. ¶¶ 37-38. Plaintiff, who lost his job because of the injury and did not have his own car, asked for help arranging a "public service vehicle to transport him to check-in appointments," but his request was denied. *Id*. at ¶¶ 39-40. Public transportation and car services were not feasible due to logistical and financial constraints. *Id*. at ¶ 41. Plaintiff occasionally relied on family members to drive him, but they were often not available because of their work schedules. *Id*. at ¶ 42. Plaintiff requested moving his check-in times to "a different time that would make it easier for him to get a ride," but that request was denied. *Id*. at ¶ 43.

On May 4, 2022, the attorney handling Plaintiff's worker's compensation case sent an email to Defendants noting Plaintiff's "diagnosed sciatica, lower back pain, and mental disabilities, as well as the hardship posed by walking to in-person check-ins" and requesting "accommodations such as at-home or virtual check-ins, or at least some dialogue about appropriate accommodations." Am. Compl. ¶¶ 51-52. HPD did not respond to this email. *Id*. HPD, including Defendant Scalise, called Plaintiff to tell him that his accommodation request could not be granted because he was not "fully disabled." *Id.* at ¶ 53.

On May 25, 2022, Defendants provided Plaintiff with a "notice of violation of probation terms" stating that Plaintiff (1) failed to report to Castellano four times between January and May of 2022, (2) was not attending mental health treatment before February 2022, and (3) had not obtained "suitable employment" since he was injured and lost his job. *Id*. at ¶¶ 54-55. After his arraignment for probation violations, Plaintiff was sentenced "to serve about three months at Herkimer County Jail, which would conclude his supervision." *Id*. at ¶ 57.

Plaintiff was incarcerated at Herkimer County Jail for "about two months." *Id*. at ¶ 64. While in the jail, Plaintiff "filled out multiple sick call slips related to his back and other pain" such as requesting "a thicker medical mattress" multiple times and requesting "a pillow to help with his pain," all of which were ignored. Am. Compl. ¶¶ 59-61.

After his release, Plaintiff received medical treatment including a December 2022 MRI showing "spondylitic changes around his lower vertebrae, such as facet and ligament flavum hypertrophy, some left asymmetric bulging disc with posterior annular fissure, and spinal canal and bilateral foraminal stenosis." Am. Compl. at ¶ 66. Plaintiff received "physical therapy, exercise, chiropractic, and a TENS unit," that were not effective and epidural steroid injections, that provided some brief relief. *Id*. at ¶ 67.

According to physical therapist notes attached to the Amended Complaint dated November 17, 2022, (1) Plaintiff's "back pain is now a chronic condition;" (2) Plaintiff's pain was rated eight out of ten, and on certain days his pain would be a ten out of ten; (3) "prolonged sitting or standing makes his pain worse;" and (4) Plaintiff suffered from a moderate to major loss in flexion range of motion.  Dkt. No. 11-3 at 3-5.[2]  A November 16, 2022 doctor's note attached to the Amended Complaint states that Plaintiff has "marked" impairments and directed that Plaintiff perform "Sedentary Work Only."  Dkt. No. 11-6 at 3.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555).  A court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

---

[2] Citations to page numbers refer to pagination generated by ECF, unless otherwise noted.

When evaluating a discrimination claim at the motion to dismiss stage, courts are instructed that "a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss;" however, "it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC*, 768 F.3d at 254 (quoting *Iqbal*, 556 U.S. at 680) (cleaned up).

## III.    DISCUSSION

The Amended Complaint alleges six claims: (1) disability-based discrimination, in violation of the ADA, against all Defendants; (2) retaliation, in violation of the ADA, against all Defendants; (3) disability-based discrimination, in violation of the Rehabilitation Act, against all Defendants; (4) retaliation, in violation of the Rehabilitation Act, against all Defendants; (5) disability-based discrimination, in violation of the New York State Human Rights Law against Scalise and Castellano, and (6) retaliation, in violation of the New York State Human Rights Law against all Defendants.

### A.    Notice of Claim

Defendants argue that Plaintiff's state-law claims must be dismissed because he did not comply with the notice-of-claim requirements. Defendant's Memorandum Law (Def. MOL) at 14-15, Dkt. No. 13; *see also* Defendant's Reply (Def. Reply MOL) at 8-9, Dkt. No. 18. Plaintiff responds that those requirements do not apply to his NYSHRL claims against Scalise and Castellano, because they may have been acting outside the scope of their employment. Plaintiff's Memorandum of Law (Pl. MOL) at 16-17, Dkt. No. 17.

"[I]n a federal court, state notice-of-claim statutes apply to state-law claims."[3] *Pan v. City of Niagara Falls*, No. 23-7513, 2025 WL 1169057, at *3 (2d Cir. Apr. 22, 2025) (quoting *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999)). In addition, state-law notice of claim requirements apply to claims brought against a county pursuant to the NYSHRL. *Wierzbicki v. County of Rensselaer,* 2015 WL 4757755, at *3 (N.D.N.Y. Aug. 12, 2015) (citing *Johnson v. Cnty. of Nassau*, No. 10–cv–06061, 2014 WL 4700025, at *23 (E.D.N.Y. Sept. 22, 2014) (citing cases)).

Under New York law, "the service of a notice of claim is a condition precedent to the commencement of a tort action against a county or its agents, officers, or employees, and must be filed within ninety days of the incident giving rise to the claim." *Wierzbicki,* 2015 WL 4757755, at *3 (citing N.Y. County Law § 52, N.Y. Gen. Mun. Law §§ 50-e, 50-i). "[P]ursuant to Section 50-i, a plaintiff must plead in the complaint that (1) the notice of claim was served, (2) at least thirty days have elapsed since the notice of claim was filed and before the complaint was filed; and (3) in that time the defendant has neglected or refused to adjust or satisfy the claim." *Id.* "Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Hardy*, 164 F.3d at 793–94 (quotations and citations omitted).

Here, the Amended Complaint does not include the necessary notice of claim allegations. In addition, Plaintiff has not argued that he filed a timely notice of claim. Thus, to the extent Plaintiff has asserted a NYSHRL claim against the County or its employees in their official capacities, these claims are dismissed.

---

[3] More specifically, federal courts have recognized that state-law notice of claim requirements apply to claims brought against a county pursuant to the NYSHRL. *Wierzbicki*, 2015 WL 4757755, at *3 (citing *Johnson v. Cnty. of Nassau*, No. 10–cv–06061, 2014 WL 4700025, at *23 (E.D.N.Y. Sept. 22, 2014) (citing cases)).

Regarding the County employees in their individual capacities, "the requirements of Sections 50–e and 50–i are not conditions precedent . . . unless the county is required to indemnify such person," and "[t]he County's duty to indemnify these employees turns on whether they were acting within the scope of their employment." *Wierzbicki,* 2015 WL 4757755, at * 4 (Aug. 12, 2015) (citing *Wharton v. Cnty. of Nassau*, No. 10–CV–0265, 2013 WL 4851713, at *15 (E.D.N.Y. Sept. 10, 2013) (internal quotation marks and citations omitted) and *Bielski v. Green*, 674 F.Supp.2d 414, 428 (W.D.N.Y. 2009)); *see also Conte v. Cnty of Nassau*, 596 F. App'x 1, 5 (2d Cir. 2014) ("The obligation to indemnify in turn depends upon the resolution of the fact-sensitive question of whether [the employees] were acting within the scope of their employment . . . in committing the alleged tortious acts." ) (quoting *Int'l Shared Servs. v. Cnty. of Nassau*, 222 A.D.2d 407, 634 N.Y.S.2d 722, 724 (2d Dep't 1995)).

Plaintiff argues that the Complaint alleged that Scalise and Castellano "discouraged him from making a compliant," "that at least one of them stated he would need to be 'fully disabled' to receive[] accommodations" and that this "excessive standard" may "reflect[] individual deviation from any legally compliant disability accommodation policies and practices that the Probation Department may have had." Pl. MOL at 17. The Amended Complaint alleges that HPD "employees, including Mr. Scalise, called [plaintiff] and said words to the effect of, his accommodation request could not be granted because he was not 'fully disabled.'" Am. Compl. ¶53.

Drawing reasonable inferences from these allegations, at this juncture the Court declines to dismiss Plaintiff's NYSHRL claims against Scalise and Castellano for failure to comply with state notice requirements. Plaintiff has sufficiently alleged conduct by these Defendants giving rise to his NYSHRL claims that may fall outside the scope of their employment, and the record

does not contain sufficient evidence upon which to resolve the scope of employment issue at this stage of the litigation. *See Int'l Shared Servs,* 222 A.D.2d at 409 (declining to resolve the scope of employment issue for purposes of state notice requirements at motion to dismiss stage, and concluding that "resolution of the issue must await discovery and further motion practice or trial."). Accordingly, Defendants' motion to dismiss on this basis is denied.

### B.      Statute of Limitations

Defendant argues that "[t]o the extent that the First Amended Complaint alleges any discriminatory treatment preceding May 2, 2022" those "allegations are time barred." Def. MOL at 13. Plaintiff responds that all of his federal claims accrued within the three-year statute of limitations period or the continuing violation doctrine applies. Pl. MOL at 15-16.

Plaintiff's federal claims are subject to a three-year statute of limitations. *Purcell v. N.Y. Inst. of Tech. Coll. of Osteopathic Med.*, 931 F.3d 59, 63 (2d Cir. 2019) (ADA); *Morse v. Univ. of Vt.*, 973 F.2d 122, 125 (2d Cir. 1992) (Rehabilitation Act). In addition, "under the continuing violation doctrine, a plaintiff may bring claims for discriminatory acts that would have been barred by the statute of limitations as long as an act contributing to that discrimination took place within the statutory time period." *Purcell*, 931 F.3d at 65 (cleaned up) (quoting *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011)). "Therefore, 'a continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the defendant to continue unremedied for so long as to amount to a discriminatory policy or practice.'" *Id.* (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994)). "The continuing violation doctrine . . . applies not to discrete unlawful acts, even where those discrete acts are part of a 'serial violation,' but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of

mistreatment." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002) (alterations removed)); *see also Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997), *abrogated on other grounds as recognized in Tassy v. Buttigieg*, 51 F.4th 521, 532 n.8 (2d Cir. 2022) ("A continuing violation is not established merely because an employee continues to feel the effects of a discriminatory act on the part of the employer."). The continuing violation doctrine applies "only if the plaintiff 'allege[s] . . . some non-time-barred acts' contributing to the alleged violation." *Gonzalez*, 802 F.3d at 220 (quoting *Harris v. City of New York,* 186 F.3d 243, 250 (2d Cir. 1999)).

Plaintiff began this action on May 2, 2025, and all conduct before May 2, 2022 would normally be barred by the statute of limitations. Dkt. No. 1. Regarding Plaintiff's discrimination claim, the Amended Complaint alleges that Defendants required him to attend an in-person check-in on May 6, 2022 after denying his request for accommodation because, as Castellano told him, he did not have "special conditions, such as being in a wheelchair," and, as Scalise and others told him, an accommodation was not available because he was not "fully disabled." Am. Compl. ¶¶ 38, 52-53, 55. At this stage of the litigation, this is sufficient to allege that Defendants denied accommodations for people unless they were "fully disabled," and that they took an act contributing to that discrimination during the permissible time period by requiring Plaintiff to report in person. Plaintiff's discrimination claims are therefore not time-barred.

Plaintiff's retaliation claims accrued on May 25, 2022, the date Defendants engaged in the allegedly retaliatory act of issuing Plaintiff a notice of violation of probation terms, and Plaintiff initiated this action on May 2, 2025. Am. Compl. ¶ 54; Dkt. No. 1. As a result, Plaintiff's retaliation claims are not time-barred.

10

Defendants' motion to dismiss Plaintiff's ADA and Rehabilitation Act retaliation claims based on the statute of limitations is therefore denied.

### C.    ADA and Rehabilitation Act Discrimination

Defendant argues that the Amended Complaint does not sufficiently allege that Plaintiff is disabled under the ADA or that Defendants committed any discriminatory act.  Def. MOL at 5-10. Plaintiff responds that the Amended Complaint sufficiently alleges disability under the ADA and a discriminatory act of denying his accommodation request.  Pl. MOL at 6-12.

"In order to prevail on a claim under either Title II of the ADA or § 504 of the [Rehabilitation Act], Plaintiff "must show that 1) he is a qualified individual with a disability; 2) [the defendant] is an entity subject to the acts; and 3) he was denied the opportunity to participate in or benefit from [the defendant's] services, programs, or activities [or that the defendant] otherwise discriminated against him by reason of his disability."  *Silva v. Robleoo,* 2023 WL 184240, at *3 (D. Conn. Jan. 13, 2023) (quoting *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016)).  "The ADA defines 'discriminate' as, inter alia, 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the provider of the service] can demonstrate that the accommodation would impose an undue hardship on' its operations."  *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.,* 804 F.3d 178, 186 (2d Cir. 2015) (citing 42 U.S.C. § 12112(b)(5)(A)).  "As the standards for actions under these provisions of the ADA and the Rehabilitation Act are generally equivalent," the Second Circuit normally "analyze[s] such claims together."  *Id.* at 187 (citing *Harris v. Mills,* 572 F.3d 66, 73–74 (2d Cir. 2009)).

Accepting all factual allegations in the Amended Complaint as true, Plaintiff has alleged sufficient facts to suggest that he is a qualified individual with a disability under the ADA and

Rehabilitation Act.  The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).  Walking and going up stairs are major life activities.  *See* 29 C.F.R. § 1630.2(i) ("Major life activities include . . . walking, standing, sitting").  "The term 'substantially limits' shall be construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard."  29 C.F.R.. § 1630.2(j)(1)(i).[4]

The Amended Complaint alleges that Plaintiff suffered from back pain at the relevant time period that made long walks and stairs painful.  Am. Compl. at ¶¶ 22, 24-27, 29-33, 35-36, 66-68.  Defendants argue that most of the medical documentation attached are dated in November 2022, and are not sufficient to allege that he was disabled in the spring of 2022.[5]  Def. Reply MOL at 3.  As an initial matter, the Amended Complaint incorporates medical records created before the spring of 2022.  Specifically, December 31, 2021 medical records state that Plaintiff has "acute onset of back pain" and sciatica.  Dkt. No. 11-3 at 2.  At this stage of the litigation, given the low standard—that the impairment "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population" with the term "substantially limits" construed "broadly in favor of expansive coverage"—these allegations are sufficient, and the November 2022 medical records need not be considered.  28 C.F.R. § 35.108(d)(1).

---

[4] The EEOC regulations implementing the ADA and its subsequent amendments, 29 C.F.R. § 1630.1, "are not binding," but "courts in the Second Circuit afford them significant deference." *Norman*, 492 F. Supp. 3d at 163 (citing *Francis v. City of Meriden*, 129 F.3d 281, 283 n.1 (2d Cir. 1997)).

[5] At this stage of the litigation, Plaintiff does not have to establish that he was disabled.  Instead, the Amended Complaint must sufficiently allege disability.  As a result, Defendants' argument that Plaintiff's ability to walk seven miles to HPD for appointments means that he was not disabled is not persuasive given Plaintiff's allegations.  Am. Compl. ¶¶ 34-35.

Regarding the second prong—that Defendant Herkimer County is subject to the acts—Defendants do not challenge this element at this stage of the proceedings, and the Court therefore does not address it. Def. MOL at 6.

Regarding the third prong—that Defendants took any adverse act against Plaintiff related to his disability—Defendants argue that the allegations are not sufficient. Def. MOL at 9-10. This prong is satisfied by alleging failure to accommodate a reasonable request for accommodations. *See Dean,* 804 F.3d at 187 (explaining that "only the third prong of the prima facie analysis was in issue—whether Defendants engaged in discrimination by failing to make reasonable accommodations."); *see also McFadden v. Noeth*, 827 F. App'x 20, 28 (2d Cir. 2020) ("Discrimination under the third prong can include 'failure to make a reasonable accommodation'") (quoting *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003) (*superseded by regulation on other grounds,* 24 C.F.R. § 100.500(c) (2015), *as recognized in Mhany Mgmt., Inc., v, County of Nassau*, 819 F.3d 581, 17 (2d Cir. 2016)).

The Amended Complaint alleges that Defendants failed to accommodate Plaintiff's request for alternatives to in-person check-ins. According to the allegations, Defendants offered accommodations to "fully disabled" individuals, such as those who used wheelchairs; there were available accommodations such as remote check-in, home check-in, providing transportation, and scheduling in-person check-in when a family member could drive Plaintiff; and Defendants refused to provide accommodations. Am. Compl. ¶¶ 25, 27, 32, 37-39, 43, 52-53. These allegations are sufficient at this stage of the litigation.

Given that the Amended Complaint alleges sufficient facts to support the elements of his ADA and Rehabilitation Act discrimination claims, Defendants' motion to dismiss those claims for failure to state a claim is denied.

### D.    ADA and Rehabilitation Act Retaliation

Defendants argue that Plaintiff's ADA and Rehabilitation Act retaliation claims should be dismissed because he did not allege that Defendants took adverse actions against Plaintiff in response to protected activity. Def. MOL at 10-11. Plaintiff responds that the Amended Complaint alleges that Plaintiff engaged in protected activity by requesting disability accommodations and that Defendants retaliated against him by issuing a notice of violation of the terms of his probation. Pl. MOL at 12-13.

"In order to establish a prima facie case of retaliation, [a plaintiff] must show that: (1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). The elements are the same for Rehabilitation Act retaliation claims. *See Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002).

The Amended Complaint alleges that Plaintiff repeatedly complained about his disability to Defendants and requested accommodations. Am. Compl. at ¶¶ 25, 27, 32, 37-39, 43, 52. This is sufficient to allege protected activity. *See Flieger v. E. Suffolk BOCES*, 693 F. App'x 14, 18 (2d Cir. 2017) ("Activities protected by the ADA include complaints of ADA discrimination . . . and requests for reasonable accommodation.").

The Amended Complaint also alleges that 21 days after Plaintiff's attorneys requested accommodations for him, Defendants sent Plaintiff a notice of violation of the terms of his probation. Am. Compl. at ¶¶ 52, 54. At this stage, this close temporal proximity is sufficient to plead that Defendants issued the notice of violation in response to Plaintiff's protected activity. *See Tafolla v. Heilig*, 80 F.4th 111, 125–26 (2d Cir. 2023) ("A plaintiff can indirectly establish a

14

causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action.") (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010)); *see also Salas v. New York City Dep't of Investigation*, 298 F. Supp. 3d 676, 687 (S.D.N.Y. 2018) (citing *Gorzynski* in the context of ADA retaliation claims).  Defendants' motion to dismiss Plaintiff's ADA and Rehabilitation Act claims for failure to state a claim is therefore denied.

### E.    Individual Liability Under the ADA and Rehabilitation Act

Defendants argue that the individual Defendants cannot be held liable under Title II of the ADA or the Rehabilitation Act.  Def. Reply MOL at 11-13.  Relying on cases outside of the Second Circuit, Plaintiff argues that ADA and Rehabilitation Act claims against individuals are cognizable in the context of public services.  Pl. MOL at 13-15.

"Neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials."  *Garcia v. S.U.N.Y. Health Scis. Ctr. Of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *see also Rivera v. Quiros*, No. 3:23-cv-227, 2024 WL 363193 at *6 (D. Conn. Jan. 31, 2024) (citing *Garcia*).  Plaintiff's ADA and Rehabilitation Act claims against Defendants Scalise and Castellano in their individual capacities are therefore dismissed.

## IV.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss under Rule 12(b)(6), Dkt. No. 13, is **GRANTED in part and DENIED in part,** and it is further

**ORDERED** that Plaintiff's ADA and Rehabilitation Act claims against Defendants Michael Scalise and Bianca Castellano in their individual capacities are **DISMISSED with prejudice**; and it is further

**ORDERED** that Plaintiff's NYSHRL claims against Defendants Herkimer County and Michael Scalise and Bianca Castellano in their official capacities are **DISMISSED without prejudice**; and it is further

**ORDERED** that Defendants' motion to dismiss under Rule 12(b)(6), Dkt. No. 13, is otherwise **DENIED**.

**IT IS SO ORDERED.**

Dated: March 10, 2026

_____

Elizabeth C. Coombe
U.S. District Judge